IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, METCO BATTERY TECHNOLOGIES, LLC, AC (MACAO COMMERCIAL OFFSHORE) LIMITED, and TECHTRONIC INDUSTRIES CO. LTD., | ) ) ) ) ) ) ) | |
| *Plaintiffs and Counterclaim Defendants,* | ) ) ) | Case No. 2-14-cv-01289-JPS |
| | ) | Hon. J.P. Stadtmueller |
| v. | ) ) | |
| CHERVON NORTH AMERICA, INC., | ) ) | |
| *Defendant and Counterclaim Plaintiff.* | ) ) ) | |

**MEMORANDUM IN SUPPORT OF CHERVON'S
MOTION TO COMPEL DISCOVERY**

# TABLE OF CONTENTS

                                                                                                                      **Page**

TABLE OF AUTHORITIES .................................................................................................... ii

TABLE OF EXHBITS ............................................................................................................. iii

I.      INTRODUCTION .......................................................................................................... 1

II.     BACKGROUND ............................................................................................................ 2

           A.        Chervon's Interrogatory No. 1 ............................................................................. 2

           B.        Chervon's Interrogatory Nos. 3 and 5–7 .............................................................. 4

           C.        Chervon's Interrogatory No. 6 ............................................................................. 5

           D.        Chervon's Interrogatory No. 9 ............................................................................. 6

III.    ARGUMENT .................................................................................................................. 7

           A.        Chervon's Interrogatory No 1: This Court Should Order Plaintiffs to Explain Why the Accused Products Meet Each Limitation of the Asserted Claims and Provide All Testing Information on Which They Rely. ..................... 7

           B.        Chervon's Interrogatory No. 9: This Court Should Order Plaintiffs to Identify the Factual Bases for Their Damages Claims and the Methodologies Plaintiffs Intend to Use to Calculate Their Damages ................... 11

           C.        Chervon's Interrogatory No. 6: This Court Should Order Plaintiffs to Identify Whether and to What Extent Products Subject to Licenses Under the Asserted Patents Are Marked with Each of the Asserted Patents. ................... 11

           D.        Improper Use of Rule 33(d): This Court Should Order Plaintiffs to Identify Responsive Documents on Which They Rely Under Rule 33(d) and Substantively Answer Portions of Interrogatories Not Otherwise Answered by the Referenced Documents. ............................................................ 12

IV.    CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
   24 F.3d 178 (Fed. Cir. 1994) ................................................................................... 12

*Carver v. Velodyne Acoustics, Inc.*,
   202 F.R.D. 27 (W.D. Wash. 2001) ............................................................................ 8

*Droplets, Inc. v. Amazon.com, Inc.*,
   No. C12-03733 HRL, 2013 WL 1563256 (N.D. Cal. Apr. 12, 2013) ........................ 7

*Linex Techs., Inc. v. Belkin Int'l, Inc.*,
   628 F. Supp. 2d 703 (E.D. Tex. 2008) ...................................................................... 7

*Mobile Storage Tech., Inc. v. Fujitsu Ltd.*,
   No. C 09-03342 JF (PVT), 2010 WL 1292545 (N.D. Cal. Mar. 31, 2010) ............. 11

*Northpoint Tech., Ltd v. Directv, Inc*,
   No. 1-09-CV-506 JRN, 2010 WL 11425556 (W.D. Tex. Oct. 28, 2010) ................ 11

*Presbyterian Manors, Inc. v. Simplexgrinnell, L.P.*,
   No. 09-2656-KHV, 2010 WL 4942110 (D. Kan. Nov. 30, 2010) ........................... 13

*Shared Memory Graphics LLC v. Apple, Inc.*,
   812 F. Supp. 2d 1022 (N.D. Cal. 2010) ..................................................................... 8

*Shorter v. Baca*,
   No. CV 12-7337-JVS (AGR), 2013 WL 12133826 (C.D. Cal. Nov. 1, 2013) ... 12, 13

*United States ex rel. Landis v. Tailwind Sports Corp.*,
   317 F.R.D. 592 (D.D.C. 2016) ................................................................................ 13

*Von Holdt v. A-1 Tool Corp.*,
   714 F. Supp. 2d 863 (N.D. Ill. 2010) ....................................................................... 12

**Statutes**

35 U.S.C. § 287 ......................................................................................................... 1, 4, 5, 11

# TABLE OF EXHBITS

| Exhibit No.[1] | Description |
|---|---|
| 1 | Chervon's First Set of Interrogatories to Plaintiffs, Dated 2/19/2015 |
| 2 | Plaintiffs' Objections and Responses to Chervon's First Set of Interrogatories, Dated 4/9/15 |
| 3 | Excerpts of Plaintiffs Infringement Claim Charts in Response to Chervon Interrogatory No. 1, Dated 4/9/15 |
| 4 | Plaintiffs' Third Supplemental Objections and Responses to Chervon's First Set of Interrogatories, Dated 4/7/17 |
| 5 | Chervon's Third Set of Interrogatories to Plaintiffs, Dated 2/24/17 |
| 6 | Plaintiffs' Objections and Responses to Chervon's Third Set of Interrogatories, Dated 3/27/17 |
| 7 | 4/21/15 H. Santhanam Letter to P. Stockhausen |
| 8 | 6/18/15 H. Santhanam Letter to J. Polakowski |
| 9 | 3/22/17 H. Santhanam Letter to J. Polakowski |
| 10 | 3/27/17 H. Santhanam Email to J. Polakowski |
| 11 | 3/30/17 H. Santhanam Letter to J. Polakowski |
| 12 | Plaintiffs' Objections and Responses to Chervon's First Set of Requests for Production, Dated 4/9/15 |
| 13 | Plaintiffs' Objections and Responses to Defendants' First Set of Common Requests for Production, Dated 4/9/15 |

---

[1] References to "Ex. __" in this brief refer to exhibits accompanying the Santhanam declaration filed herewith.

I.   **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 37, Chervon North America, Inc. ("Chervon") respectfully moves this Court for an order compelling Plaintiffs to answer in the first instance or supplement their responses to Chervon's Interrogatory Nos. 1, 3, 5–7, and 9. As discussed below, for some of these interrogatories, Chervon has been pursuing meaningful responses from Plaintiffs since early 2015 to no avail. With discovery rapidly progressing, Chervon seeks this Court's intervention.

In response to Chervon's Interrogatory No. 1, which seeks the underlying bases for Plaintiffs' infringement allegations, Plaintiffs provided claims charts that merely parrot the claim limitations without offering any analysis, particularly as to disputed claim limitations, and failed to describe any testing that Plaintiffs have conducted to reach the conclusion that the accused products infringe. Nor have Plaintiffs supplemented their claim charts since they initially served them in April 2015. With respect to Chervon's Interrogatory No. 9, which seeks the underlying facts and bases for the damages Plaintiffs claim they have suffered, Plaintiffs have simply objected and refused to provide any answer at all. Similarly, in response to Chervon's Interrogatory No. 6, Plaintiffs state that they are entitled to past damages because they purportedly marked their products with one of the patents-in-suit. But Plaintiffs do not provide any explanation of whether, and to what extent, the products sold by Plaintiffs' licensees have been marked with the patents-in-suit as required by 35 U.S.C. § 287. Further, in their responses, especially as to Chervon's Interrogatory Nos. 3 and 5–7, Plaintiffs improperly rely on Rule 33(d) and simply cross-reference documents produced in response to various requests for production without identifying those documents in their response or explaining how or why they answer Chervon's interrogatories. Therefore, this Court should order Plaintiffs to provide fulsome responses to each of Chervon's Interrogatory Nos. 1, 3, 5–7, and 9.

## II. BACKGROUND

### A. Chervon's Interrogatory No. 1

Chervon's Interrogatory No. 1, served on February 19, 2015, seeks the legal and factual bases for Plaintiffs' infringement allegations:

> Chervon's Interrogatory No. 1: Separately for each Chervon product that You contend infringes one or more claims of the Patents-in-Suit, state in detail the complete legal and factual basis or bases for Your contention, including how each such claim reads on each such product on a product-specific and limitation-by-limitation basis; identify as each act performed by Chervon (e.g., making, selling, offering to sell, using in the United States or importing into the United States) that forms the basis of any allegation of infringement; and identify the person(s) most knowledgeable of facts supporting or disputing such contentions.

(Ex. 1, 2/19/15 Chervon's 1st Set of Interrogs. at No. 1.) On April 9, 2015, Plaintiffs provided infringement claim charts in response to Interrogatory No. 1. (*See, e.g.,* Ex. 3, Excerpts of Pls.' 4/9/15 Claim Charts). Although these infringement claim charts totaled several hundred pages, they largely alleged that limitations of the asserted claims were met without providing any analysis and repeated these allegations for each accused product. (*Id.*) The charts do not set forth or explain any test results or testing methodologies on which Plaintiffs are relying to accuse each product of infringement. (*Id.*) In particular, the claim charts do not explain how Plaintiffs have determined that each product infringes the disputed 20 amp limitation. (*Id.*)

Chervon previously raised concerns regarding the lack of specificity in Plaintiffs' claim charts in multiple letters and meet and confers in 2015 and filed a motion to compel. (*See, e.g.*, Ex. 7, 4/21/15 H. Santhanam Ltr. at 1–2; Ex. 8, 6/18/15 Santhanam Ltr. at 1–2; Dkt. 42, Chervon Motion to Compel at 2–3.) Based on Plaintiffs representations that the parties still needed to meet and confer, this Court denied Chervon's motion to compel without prejudice. (Dkt. 51 at 2–4.) Plaintiffs, however, did not supplement their claim charts to provide any additional analysis or basis for their infringement.

Before the stay, Chervon moved for summary judgment of noninfringement as to various accused battery packs that Chervon tested and demonstrated did not meet the 20 amp limitation. (Dkt. 57-1, Br. in Support of Chervon MSJ at 21–24; Dkt. 61-2, Decl. of Dr. Yet-Ming Chiang ¶¶ 56–74.) In their opposition to Chervon's motion for summary judgement, Plaintiffs submitted a declaration by their technical expert, Dr. Mehrdad Ehsani, reporting the results of tests that according to Plaintiffs yielded contrary results. (Dkt. 84, Pls.' Opp. to Chervon MSJ at 18–19; Dkt. 91-3, Decl. of Dr. Mehrdad Ehsani.) Plaintiffs submitted, and relied on, this same declaration by Dr. Ehsani before the Patent Office during the *inter partes* reviews of the patents-in-suit along with other declarations by Dr. Ehsani referencing testing of Positec, Hilti, and Snap-on battery packs. Plaintiffs, however, did not identify who performed all of the testing, provide the all of the raw data from their testing, or even disclose the underlying testing protocols and methodologies that Plaintiffs used to determine infringement, including the number times each battery pack was tested and the voltage and temperature thresholds (if any) that Plaintiffs used. (Dkt. 100-1, Chervon Reply in Support of MSJ at 9–11.) Chervon served a subpoena on Dr. Ehsani seeking this formation, but Plaintiffs refused to accept service of that subpoena. (*Id.* (citing Dkt. 102-4, 9/15/15 Stockhausen Ltr.))

Since this Court lifted the stay of litigation, Chervon has continued to seek supplemental infringement contentions from Plaintiffs. For example, in correspondence on March 22, 2017 and in meet and confers on March 28–29, 2017, Chervon again explained that Plaintiffs' claim charts are deficient and fail to provide sufficient explanation or evidence such as testing in support. (Ex. 9, 3/22/17 Santhanam Ltr. at 2–3; Ex. 11, 3/30/17 Santhanam Ltr. at 2.) Plaintiffs stated that they would not supplement their interrogatory response to provide additional detail such as tests of the accused products or the methodologies used to determine that any accused products infringe, even if such will be relied upon by Plaintiffs' expert witnesses, until the

3

deadline for expert disclosures. (Ex. 11, 3/30/17 Santhanam Ltr. at 2.) Under the governing Federal Rules, opening expert disclosures are not due until July 17, 2017, Fed. R. Civ. P. 26(a)(2)(D)(i), which more than two weeks after this Court's June 30, 2017 deadline for claim construction and dispositive motions (Dkt. 137).

**B.  Chervon's Interrogatory Nos. 3 and 5–7**

Chervon's Interrogatory Nos. 3 and 5–7 seek the following:

Chervon's Interrogatory No. 3: Identify and describe with particularity all factual and legal bases upon which You may rely that supports your contention that Chervon has willfully infringed any of the Patents-In-Suit, including the identity of all documents, electronically stored information, tangible thing, and persons with knowledge of the facts concerning that contention.

Chervon's Interrogatory No. 5: Describe the factual circumstances of how Plaintiffs first became aware of any alleged infringement by Chervon of any claim of the Patents-in-Suit, including when Plaintiffs became aware of the accused Chervon products, the individuals who first became aware of the accused Chervon products, any testing that Plaintiffs conducted on the accused Chervon products, and the identity of all documents, electronically stored information and tangible thing relating to such circumstances.

Chervon's Interrogatory No. 6: State whether You contend that You are entitled to recover compensatory damages from Chervon for any infringement occurring prior to the filing of the Complaint initiating this litigation, and if so, identify and describe with particularity all factual and legal bases supporting that contention, including when and how You first provided notice to Chervon of each of the Patents-In-Suit and any alleged infringement thereof, and how You and all licensees of the Patents-In-Suit have complied with the marking requirements of 35 U.S.C. § 287.

Chervon's Interrogatory No. 7: Describe in detail all methods or test procedures Plaintiffs have used or otherwise relied on to determine whether any battery pack, including the accused Chervon products or any Alleged Embodying Product, meets the 20 Amp Limitation, and with respect to any such tests, describe the C-rate at which the battery pack was discharged, the capacity of each battery cell and method used to determine such capacity, and the nominal voltage of the battery pack and each battery cell and method used to determine such nominal voltage.

(Ex. 1, 2/19/15 Chervon's 1st Set of Interrogs. at Nos. 3, 5–7.)  In response to Interrogatory Nos. 3 and 5–7, Plaintiffs rely on Federal Rule of Civil Procedure 33(d), but merely "refer Chervon to the documents produced in response to [various] Request[s] [for Production]."  (Ex. 2, Pls.' 4/9/15 Resp. to Chervon's 1st Set of Interrogs. at Nos. 3, 5–7.)  In correspondence on March 22, 2017 and during meet-and-confer calls on March 28–29, Chervon explained that these responses do not identify documents with sufficient specificity to adequately respond to the request or to satisfy Rule 33(d).  (Ex. 9, 3/22/17 Santhanam Ltr. at 1–2; Ex. 11, 3/30/17 Santhanam Ltr. at 1.)  Plaintiffs responded that they believe their identification of documents is sufficient and that they would not supplement their interrogatory responses to identify the particular documents on which they are relying or explain why those documents purportedly provide responsive information.  (Ex. 11, 3/30/17 Santhanam Ltr. at 1.)

### C. Chervon's Interrogatory No. 6

Chervon's Interrogatory No. 6, served on February 19, 2015, seeks the factual and legal bases for Plaintiffs' contention that they are entitled to pre-suit damages:

> Chervon's Interrogatory No. 6:  State whether You contend that You are entitled to recover compensatory damages from Chervon for any infringement occurring prior to the filing of the Complaint initiating this litigation, and if so, identify and describe with particularity all factual and legal bases supporting that contention, including when and how You first provided notice to Chervon of each of the Patents-In-Suit and any alleged infringement thereof, and how You and all licensees of the Patents-In-Suit have complied with the marking requirements of 35 U.S.C. § 287.

(Ex. 1, 2/19/15 Chervon's 1st Set of Interrogs. at No. 6.)  Plaintiffs' response did not provide information regarding whether Plaintiffs' licensees have marked any licensed products.  (Ex. 4, Pls.' 4/7/17 Suppl. Resp. to Chervon's 1st Set of Interrogs. at No. 6.)  In correspondence on March 22, 2017, Chervon requested that Plaintiffs supplement this interrogatory response to include information regarding marking by licensees.  (Ex. 9, 3/22/2017 Santhanam Ltr. at 4.)  During meet and confers on March 28–29, 2017, Plaintiffs stated that they disagreed such

information was "required" by the interrogatory, but that they would assess and supplement by April 7, 2017 if they agreed they were required to provide information about marking by licensees. (Ex. 11, 3/30/17 Santhanam Ltr. at 2.) On April 7, 2017, Plaintiffs provided a supplemental response to Interrogatory No. 6 but refused to provide the requested information regarding marking of products by Plaintiffs' licensees. (*See* Ex. 4, Pls.' 4/7/17 Resp. to Chervon's 1st Set of Interrogs. at No. 6.)

### D. Chervon's Interrogatory No. 9

Chervon's Interrogatory No. 9, served on February 24, 2017, seeks the factual and legal bases for Plaintiffs' damages contentions:

> Chervon's Interrogatory No. 9: Describe in detail the factual and legal bases for any and all damages that each of the Plaintiffs seeks based on Chervon North America, Inc.'s alleged infringement of the Patents-in-Suit, identify the persons (other than outside counsel) most knowledgeable regarding all such bases, including their roles and responsibilities, and identify all documents and other evidence that each Plaintiff may rely upon to support all such bases. A complete answer to this interrogatory will describe in detail each Plaintiff's theory of damages and the method used to calculate the damages claimed by each Plaintiff, including without limitation whether the calculation is based on lost profits (and if so, a detailed explanation of how and why each *Panduit* factor is allegedly met) and/or a reasonable royalty (and if so, a detailed analysis, and an explanation of the impact, if any, of each *Georgia-Pacific* factor). A complete answer to this interrogatory further will state whether any prejudgment interest is sought and, if so, the interest rate and how that interest rate was determined.

(Ex. 5, 2/24/17 Chervon's 3d Set of Interrogs. at No. 9.) On March 27, 2017, Plaintiffs objected to this interrogatory and refused to respond other than to state that "Plaintiffs will provide information in response to this Interrogatory and expert disclosures in accordance with the form and timing required by the Federal Rules of Civil Procedure and the applicable Orders set by the Court." (Ex. 6, Pls.' 3/27/17 Resp. to Chervon's 3d Set of Interrogs. at No 9.). That same day, Chervon emailed Plaintiffs, explaining that it is entitled to the factual bases underlying Plaintiffs' damages claims before expert discovery. (Ex. 10, 3/27/17 Santhanam Email.) But during meet

and confers on March 28–29, Plaintiffs continued to refuse to provide any substantive response to this interrogatory until after expert disclosures. (*See* Ex. 11, 3/30/17 Santhanam Ltr. at 3–4.)

## III. ARGUMENT

### A. Chervon's Interrogatory No 1: This Court Should Order Plaintiffs to Explain Why the Accused Products Meet Each Limitation of the Asserted Claims and Provide All Testing Information on Which They Rely.

Since the beginning of discovery in this case, Plaintiffs have refused to provide meaningful infringement contentions in response to Chervon's Interrogatory No. 1, undermining Chervon's ability to understand Plaintiffs' application of the asserted patent claims. Chervon promptly raised this issue with Plaintiffs in correspondence dating back to April 2015 (*see, e.g.*, Ex. 7, 4/21/15 H. Santhanam Ltr. at 1–2; Ex. 8, 6/18/15 Santhanam Ltr. at 1–2) and previously moved to compel after Plaintiffs refused to supplement their infringement contentions (Dkt. 42 at 2–3). Plaintiffs, however, asserted that the parties still needed to meet and confer (Dkt. 44 at 4), and based on Plaintiffs assertions, this Court denied Chervon's motion without prejudice (Dkt. 51 at 2–4). But nearly two years later, Plaintiffs still have not supplemented their infringement contentions and they refuse to provide their infringement positions until expert discovery.

Chervon, however, is entitled know the facts and bases underlying Plaintiffs infringement allegations well in advance of when expert reports are due. *Cf. B-K Lighting, Inc. v. Vision3 Lighting*, 930 F. Supp. 2d 1102, 1136 (C.D. Cal. 2013) (granting motion to strike expert's infringement analysis discussing structures not identified in infringement contentions). Indeed, infringement contentions are routinely provided in patent cases and often required by local patent rules to be provided at the beginning of discovery. *See Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 706 (E.D. Tex. 2008) (discussing Patent Rule 3-1); *Droplets, Inc. v. Amazon.com, Inc.*, No. C12-03733 HRL, 2013 WL 1563256, at *5 (N.D. Cal. Apr. 12, 2013) (same). Such infringement contentions generally "must reflect all facts known to [Plaintiffs']

7

including those discovered in their Rule 11 pre-filing inquiry, and contain sufficient detail regarding [Plaintiffs'] theory of infringement to provide [Chervon] with notice of infringement beyond the claim language itself." *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1026 n.4 (N.D. Cal. 2010); *see also Droplets*, 2013 WL 1563256, at *5 ("[S]ome association between the evidence and the language used in the claim limitations is necessary . . . ."); *Linex Techs.*, 628 F. Supp. 2d at 707 (granting motion to compel because "Plaintiff failed to identify where each limitation of each asserted claim is found within each Accused Product."). Even courts that do not have any local rules or established practices governing the disclosure of infringement contentions have required patentee-plaintiffs to disclose and explain the bases of their infringement allegations at similar stages of the case as here. *Carver v. Velodyne Acoustics, Inc.*, 202 F.R.D. 273, 274 (W.D. Wash. 2001) (granting motion to compel detailed claim charts in response to infringement contentions, noting, "[Defendant] is entitled to know what led the [Plaintiffs] to file their patent infringement suit" and Plaintiffs' "objections on the grounds of attorney-client and work-product privilege are meritless.").

Here, although Plaintiffs have provided infringement claim charts that superficially appear lengthy, these charts lack in substance and largely parrot the claim language without providing any factual basis or analysis. (*See, e.g.*, Ex. 3, Excerpts of Pls.' 4/9/15 Claim Charts). That is particularly problematic as to key claim limitations that the parties dispute. As an example, Plaintiffs simply conclude that the accused products meet the disputed 20 amp limitation required by every asserted claim but fail to describe how they determined the discharge rate of the accused products or provide any basis for their belief that the accused products meet this limitation. (*E.g.*, *id.* at '290 Claim Chart at 1 (stating, without analysis, that "[t]he plurality of . . . battery cells of the Kobalt K18-LB15A battery pack are capable of producing an average discharge current greater than or equal to approximately 20 amps.")). This

8

information is especially important, given that Chervon has explained and, in fact, previously moved for summary judgment that the 20 amp limitation is indefinite. (Dkt. 60-1, Br. in Support of MSJ at 4–12; *see also* Dkt. 161-1, Appeal Br. of Chervon and Positec at 45–55.)

In opposition to Chervon's earlier motion to compel, Plaintiffs argued that no further explanation of the 20 amp limitation or other limitations is needed because Plaintiffs have identified their proposed claim constructions, which purportedly "leave no doubt as to why Plaintiffs contend each limitation is met by each accused product." (Dkt. 44 at 2.) That is far from the case. For instance, Plaintiffs construe the 20 amp limitation as follows: "the battery cells, when configured together in a battery pack, are capable of producing reasonably close to 20 amps of discharge current or greater over the course of delivering their entire rated capacity." (Dkt. 60-1 at 10.) Plaintiffs, however, do not identify or explain the product testing on which they have relied (if any) to determine whether any accused product meets this limitation even as construed by Plaintiffs. Notably, in order to get the patent-in-suit issued, Plaintiffs argued to the Patent Office that the prior art lithium-ion battery packs that E-One Moli had developed and provided to Plaintiff MET were failures based on several different tests, including constant current discharge tests, intermittent discharge tests, as well as a cutting test that used the battery packs to power a circular saw to make repeated cuts in wood. (Dkt. 173-10, March 2009 Meyer Decl. ¶¶ 6–13.) Plaintiffs also represented to the Patent Office that the E-One Battery Packs failed because they supposedly overheated above the upper-temperature threshold of 60° C set by the cell manufacturer or their voltage dropped below the low-voltage threshold also set by the cell manufacturer. (*Id.* ¶¶ 7, 12 (applying cell-manufacturer's thresholds).) Yet, here, Plaintiffs provide no test results in response to Interrogatory No. 1 and do not even identify the testing methodologies that they used to determine infringement, including the voltage or temperature thresholds (if any) that were used, much less why Plaintiffs chose to use those testing

methodologies or otherwise deviated from the testing methodologies they used to call the E-One Battery Packs failures.

Worse, in opposition to Chervon's earlier motion for summary judgment and during the *inter partes* reviews of the patents-in-suit, Plaintiffs already filed, and relied on, declarations by Dr. Ehsani that references some evidence of testing. (Dkt. 84, Pls.' Opp. to Chervon MSJ at 18–19; Dkt. 91-3, Decl. of Dr. Mehrdad Ehsani.) But Plaintiffs have not identified who performed all of the tests, what underlying testing protocols and methodologies Plaintiffs used, including the number times each battery pack was tested or the voltage and temperature thresholds (if any) that were used, or all of the raw data from their testing. (Dkt. 100-1, Chervon Reply in Support of MSJ at 9–10.) Plaintiffs further refused to accept service of a subpoena issued to Dr. Ehsani (their own technical expert) that sought this information. (*Id.* (citing Dkt. 102-4, 9/15/15 Stockhausen Ltr.).)

Chervon should not be forced to play Plaintiffs' game of hide-the-ball and wait until after the parties complete most (if not all) of the fact depositions in this case and submit their opening claim construction and summary judgment briefs to obtain the bases of Plaintiffs allegations—information that is routinely provided at the beginning of discovery in patent cases and on which Plaintiffs have already relied in alleging infringement both before this Court and the Patent Office. (Dkt. 100-1, Chervon Reply in Support of MSJ at 9–11.) Therefore, this Court should order Plaintiffs to provide a full response to Chervon's Interrogatory No. 1 by a date certain, including sufficiently detailed claim charts that explain how the accused products allegedly meet each limitation of the asserted claims and set forth the testing on which they are relying to allege infringement, including the procedures or protocols followed, the voltage and temperature thresholds (if any) that were used, and the raw data generated from each individual test.

**B. Chervon's Interrogatory No. 9: This Court Should Order Plaintiffs to Identify the Factual Bases for Their Damages Claims and the Methodologies Plaintiffs Intend to Use to Calculate Their Damages.**

Similarly, Plaintiffs refuse to provide until the deadline for expert disclosures any substantive response to Chervon's Interrogatory No. 9, which seeks information related to Plaintiffs' damages claims. (*See* Ex. 11, 3/30/17 Santhanam Ltr. at 3–4.) Chervon, however, is entitled to the factual bases underlying Plaintiffs' damages claims well before expert discovery, such as which licenses and other evidence Plaintiffs rely on, and the methodologies Plaintiffs intend to use to calculate damages. *Mobile Storage Tech., Inc. v. Fujitsu Ltd.*, No. C 09-03342 JF (PVT), 2010 WL 1292545, at *1 (N.D. Cal. Mar. 31, 2010) ("[P]laintiff MST shall provide the factual basis for its damages claim, the identification of all facts to support its damages theories, and any factual information underlying the *Georgia-Pacific* factors. . . . In addition, plaintiff MST shall specify whether or not it has determined an applicable royalty rate."); *Northpoint Tech., Ltd v. Directv, Inc*, No. 1-09-CV-506 JRN, 2010 WL 11425556, at *2 (W.D. Tex. Oct. 28, 2010) (granting motion to compel response to interrogatory seeking factual bases for damages claim because "early disclosure of damage claims and bases is contemplated by the [Federal] Rules [of Civil Procedure]."). Therefore, this Court should order Plaintiffs to answer Interrogatory No. 9, in the first instance, and provide the requested information.

**C. Chervon's Interrogatory No. 6: This Court Should Order Plaintiffs to Identify Whether and to What Extent Products Subject to Licenses Under the Asserted Patents Are Marked with Each of the Asserted Patents.**

Chervon's Interrogatory No. 6 seeks the factual and legal bases for Plaintiffs' claim that they are entitled to pre-suit damages, including "how [Plaintiffs] *and all licensees* of the Patents-In-Suit have complied with the marking requirements." (Ex. 1, 2/19/15 Chervon's 1st Set of Interrogatories at No. 6 (emphasis added).) Plaintiffs' response indicates that they rely on product marking under 35 U.S.C. § 287 to claim past damages but does not provide information regarding whether Plaintiffs' licensees have marked any licensed products. (Ex. 4, Pls.' 4/7/17

11

Suppl. Resp. to Chervon's 1st Set of Interrogs. at No. 6.) In this regard, Plaintiffs bear the burden of presenting evidence of marking to support a claim of past damages under § 287. *See Von Holdt v. A-1 Tool Corp.*, 714 F. Supp. 2d 863, 868 (N.D. Ill. 2010) ("[T]he defendants have no burden to establish non-compliance with the marking."). To do satisfy their burden, Plaintiffs must demonstrate that there has been substantially consistent and continuous marking of not only their own products but also third-party products that are licensed under the asserted patents. *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994) (construing "for or under" language in Section 287(a) to apply to licensees: "A licensee who makes or sells a patented article does so 'for or under' the patentee, thereby limiting the patentee's damage recovery when the patented article is not marked."). Therefore, this Court should order Plaintiffs to supplement their response to Interrogatory No. 6 to identify whether and to what extent all licensed products are marked.

> **D. Improper Use of Rule 33(d): This Court Should Order Plaintiffs to Identify Responsive Documents on Which They Rely Under Rule 33(d) and Substantively Answer Portions of Interrogatories Not Otherwise Answered by the Referenced Documents.**

Plaintiffs' interrogatory responses fail to comply with Federal Rule of Civil Procedure 33(d) where they generally refer to Plaintiffs' responses to various requests for production instead of specifically identifying, by bates number, documents that purportedly answer each interrogatory. For example, in response to Chervon's Interrogatory Nos. 3 and 5–7, Plaintiffs state, "pursuant to Fed. R. Civ. P. 33(d), [Plaintiffs] refer Chervon to the documents produced in response to [a] Request [for Production]." (Ex. 2, Pls.' 4/9/15 Resp. to Chervon's 1st Set of Interrogs. at Nos. 3, 5–7.) These responses do not identify documents with sufficient specificity to adequately respond to the request or to satisfy Rule 33(d). *See Shorter v. Baca*, No. CV 12-7337-JVS (AGR), 2013 WL 12133826, at *4 (C.D. Cal. Nov. 1, 2013) ("Ordinarily, the responding party should identify documents by bates stamp or production number.");

*Presbyterian Manors, Inc. v. Simplexgrinnell, L.P.*, No. 09-2656-KHV, 2010 WL 4942110, at *3 (D. Kan. Nov. 30, 2010) (awarding costs of motion to compel and noting Plaintiff failed to comply with Rule 33(d) where it merely "directed Defendant to the documents produced in response to Request for Production Nos. 18–19.").

A general reference to all documents produced in response to a request for production does not identify documents "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," as required by Rule 33(d). *See Presbyterianb*, 2010 WL 4942110, at *3. Moreover, the identification of documents alone does not provide a fulsome answer to these interrogatories, which seek information including Plaintiffs' first awareness of alleged infringement and identification of most knowledgeable persons. *See United States ex rel. Landis v. Tailwind Sports Corp.*, 317 F.R.D. 592, 594 (D.D.C. 2016) ("[C]ourts have consistently held that Rule 33(d) cannot be used with respect to contention interrogatories.") (internal quotations and brackets omitted).

Plaintiffs assert that they have complied with Rule 33(d) because they have tagged documents responsive to particular requests for production using electronic metadata codes and reference those requests in their interrogatory responses. (*See* Ex. 11, 3/30/17 Santhanam Ltr. at 1.) But a party relying on Rule 33(d) "should identify documents by bates stamp or production number" or some other means that is static and easily referenced. *See Shorter*, 2013 WL 12133826, at *4; *Presbyterian Manors*, 2010 WL 4942110, at *3. Plaintiffs approach to using tagging metadata to associate documents with requests for production and then pointing to that tagging metadata in response to interrogatories poses numerous practical problems. As an initial matter, Plaintiffs' tagging metadata is not static and may change each time Plaintiffs produce documents and update their tagging metadata, making it difficult to reference purportedly responsive documents at depositions, hearings, or trial. Plaintiffs have also produced numerous

13

documents (over 5000) that they have not tagged at all. (Ex. 9, 3/22/17 Santhanam Ltr. at 6.) Moreover, the responses to requests for production that Plaintiffs reference in their interrogatory responses often cross-reference other discovery responses, making the process even more cumbersome. In some instances, Plaintiffs' serial cross-referencing of discovery responses results in a wild goose chase that leads to no documents at all. For example, Plaintiffs' response to Interrogatory No. 7 refers Chervon to all documents that Plaintiffs produced in response to Chervon's Request for Production No. 21 (Ex. 2, Pls.' 4/9/15 Resp. to Chervon's 1st Set of Interrogs. at No. 7), which in turn refers to Plaintiffs' response to Common Request for Production No. 45 (Ex. 12, Pls.' 4/9/15 Resp. to Chervon's 1st Set of Reqs. for Production. at No. 7), to which Plaintiffs object in its entirety and produce no documents at all (Ex. 13, Pls.' 4/9/15 Resp. to Defs.' 1st Set of Common RFPs at No. 45). Ultimately, it should take little effort for Plaintiffs to create a static list of bates numbers corresponding to documents that they contend have information responsive to Chervon's interrogatories and include those bates numbers in their interrogatory responses.

Therefore, this Court should order Plaintiffs to supplement their interrogatory responses to specifically identify responsive documents on which they rely under Rule 33(d) by bates number within the interrogatory response and substantively answer portions of interrogatories not otherwise answered by the referenced documents.

## IV. CONCLUSION

For the foregoing reasons, this Court should grant Chervon's motion to compel Plaintiff's fulsome responses to discovery.

**Dated:** April 17, 2017    By:   */s/Christopher R. Liro*
Christopher R. Liro (1089843)
Andrus Intellectual Property Law, LLP
100 E. Wisconsin Avenue, Suite 1100
Milwaukee, WI 53202
Phone: (414) 271-7590
Fax: (414) 271-5770
*chris.liro@andruslaw.com*

Russell E. Levine, P.C.
Hari Santhanam
Nyika Strickland
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
*rlevine@kirkland.com*
*hsanthanam@kirkland.com*
*nstrickland@kirkland.com*

Christa J. Laser
KIRKLAND & ELLIS LLP
655 15th St. NW
Washington, D.C., 20005
Telephone: (202)-879-5000
Facsimile: (202)-879-5200
*christa.laser@kirkland.com*

*Attorneys for Defendant and Counterclaim Plaintiff Chervon North America, Inc.*