# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, METCO BATTERY TECHNOLOGIES LLC, AC (MACAO COMMERCIAL OFFSHORE) LIMITED, and TECHTRONIC INDUSTRIES CO. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> CHERVON NORTH AMERICA INC., <br><br> Defendant. | Case No. 14-CV-1289-JPS <br><br><br><br><br> **ORDER** |

On April 4, 2017, Defendant Chervon North America Inc. ("Chervon") filed an expedited motion under Civil Local Rule 7(h) for a protective order barring Plaintiffs from disclosing Chervon's "highly sensitive technical and financial information" to two individuals who are employed as in-house counsel to a subsidiary of Plaintiff Techtronic Industries Co. Ltd. ("Techtronic"). (Docket #166). These two individuals, Chris Agnew ("Agnew") and Ben Alley ("Alley") work for Techtronic Industries North America, Inc. and One World Technologies, Inc., respectively. Agnew is the Global Director of Intellectual Property for his company, while Alley is a patent attorney at One World Technologies, Inc. (Docket #167-2 at 1). Plaintiffs have designated them to receive confidential information under the Court's protective order in this case (Docket #39), and Chervon objects, arguing that disclosing such information to Agnew and Alley "presents a serious and unjustifiable risk of inadvertent disclosure as well as business or economic harm to Chervon and nonparty Chervon entities who have

produced confidential documents and information in this litigation at Plaintiffs' request." (Docket #166 at 1).

A protective order can issue to protect a party from undue burden or expense by prohibiting disclosure of discovery materials to certain persons. *See* Fed. R. Civ. P. 26(c)(1); *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). The party seeking the protective order must establish good cause for the relief it seeks. Fed. R. Civ. P. 26(c)(1); *Wiggins v. Burge*, 173 F.R.D. 226, 228 (N.D. Ill. 1997). To show good cause, the party must demonstrate a particular need for protection; "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasons, do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). The district court has discretion to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

"A determination of whether a trial lawyer should be denied access to information under a protective order because of his additional role in patent prosecution" is a matter unique to patent law, and so the guidance of the Federal Circuit is controlling. *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1377 (Fed. Cir. 2010).[1] The Federal Circuit has held that whether disclosure of information under a protective order to a certain person represents an unreasonable risk of inadvertent disclosure must be decided on a counsel-by-counsel basis. *Id.* at 1378. The key inquiry is whether counsel is involved in the company's "competitive decisionmaking," which can include

---

[1]*Deutsche Bank* dealt with a patent prosecution bar, but it has been analogized to other contexts, *Prolitec Inc. v. ScentAir Techs., Inc.*, 945 F. Supp. 2d 1007, 1010 (E.D. Wis. 2013), and the Court finds that its analysis fits the problem presented here.

advising a client about pricing, product design, or other matters based on similar knowledge known about a competitor. *Id.*

In patent cases, the competitive decisionmaking concern is implicated when counsel not only advises the corporation about the present suit but also aids the corporation in research and patent prosecution. *Id.* at 1379. However, it is not the case that every lawyer involved in such matters cannot also participate as trial counsel. *Id.* "The facts, not the category must inform the result." *Id.*; *In re Dell Inc.*, 498 F. App'x 40, 43 (Fed. Cir. 2012) (observing that the Federal Circuit has "repeatedly rejected denial of access on. . .general assumptions" or "categorical presumptions"). On the one hand, exclusion probably should not apply to an attorney who does ancillary patent-related work or engages in "high-altitude oversight" without a "significant role" in actually crafting patent applications or advising clients on what research or production to undertake. *Deutsche Bank*, 605 F.3d at 1379–80. In such cases, the attorney likely will not rely on the confidential information learned in the suit to gain competitive advantage for his company. *Id.*

Conversely, the rule sensibly applies to attorneys who "obtai[n] disclosure materials for new inventions and inventions under development, investigat[e] prior art relating to those inventions, mak[e] strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writ[e], revie[w], or approv[e] new applications or continuations-in-part of applications to cover those inventions, or strategically amen[d] or surrende[r] claim scope during prosecution." *Id.* at 1380. These duties implicate competitive decisionmaking on behalf of the corporation, and it is more likely that an attorney who gained confidential information in the course of an infringement suit would be influenced by that information in his other tasks. *Id.* Furthermore, it is important to consider not

only the attorney's duties but also the confidential information at issue in the infringement suit; if it is merely financial data or business information, it might not be relevant to competitive decisionmaking about patents, but if it is information related to inventions and technology being developed, the danger is greater. *Id.* at 1381.

In the end, the scope of responsibilities which lead a court to conclude that the risk of inadvertent disclosure is too high is tethered to the particular individual in question. *See id.* at 1380. And, moreover, even if counsel represents some risk of inadvertent disclosure, the danger must be equitably balanced against the corporation's right to have counsel of its choosing. *Id.*

Against this backdrop, the Court assesses Chervon's specific concerns about disclosure of information to Agnew and Alley. First, Chervon contends that these two cannot properly be designated to receive confidential information under the protective order, which only permits designation of in-house counsel for a party. (Docket #166 at 1); (Docket #39 at 5); *Mixing Equip. Co. v. Innova-Tech, Inc.*, Civ. A. No. 85–0535, 1986 WL 9264, at *1 (E.D. Pa. Aug. 20, 1986) (upholding decision to deny in-house counsel of plaintiff's parent corporation access to confidential information because protective order only contemplated designation of in-house counsel of a party).[2] Plaintiffs acknowledge that Agnew and Alley are not officially employed by any party to the case, but argue that (1) being employed by wholly owned subsidiaries of Techtronic is sufficient because of the control Techtronic

---

[2]Plaintiffs say that the Court cannot rely on *Mixing Equipment* because it is unpublished and was issued in 1986. (Docket #175 at 2 n.2). It is true that the Seventh Circuit prohibits citation of non-precedential orders issued prior to 2007. 7th Cir. R. 32.1(d). But the rule only applies to the Seventh Circuit's orders, not those of other courts. *See id.* This Court can consider *Mixing Equipment* to the extent it is persuasive.

enjoys over the subsidiaries and (2) Agnew and Alley's responsibilities include serving as in-house counsel to Techtronic, albeit apparently informally. (Docket #175 at 1–2). Chervon counters that the language of the protective order leaves no room for Plaintiffs' interpretation. (Docket #166 at 1–2).

Second, Chervon complains that Plaintiffs have provided only conclusory descriptions of Agnew and Alley's job responsibilities, despite its requests for greater specificity, thereby depriving Chervon of a meaningful opportunity to assess whether the men could compromise Chervon's confidential information because of their involvement in prosecuting Plaintiffs' patents, designing or developing Plaintiffs' products, licensing and enforcing Plaintiffs' patents, or advising other competitive decisionmakers about such matters. *Id.* at 2. Plaintiffs say that they complied with the requirements of the protective order in giving the job descriptions for these two attorneys. (Docket #175 at 2).

Finally, Chervon believes that based on the information it has, disclosure of confidential information to Agnew and Alley would cause them business or economic harm. (Docket #166 at 2–3). Specifically, in his role, Agnew engages in "oversight of the intellectual property strategy for Techtronic Industries North America, Inc., and management of intellectual property related matters for the business." (Docket #167-2 at 1). Alley "perform[s] patent clearance, manag[es] the internal patent portfolio, and manag[es] and counsel[s] the business teams regarding patent and patent litigation matters for One World Technologies, Inc." *Id.* Because of their job duties, Chervon reasons, there exists an unreasonable risk that disclosure of confidential information to these individuals would result in inadvertent disclosure of that information. This is even more likely if, as Chervon

suspects, Agnew and Alley actually have responsibilities that include patent prosecution, licensing, or enforcement, or advising other competitive decisionmakers on these topics. *Id.* at 3. Plaintiffs call Chervon's charge "speculative," contending that there is nothing in their job descriptions leading one to believe that Agnew or Alley have a competitive decisionmaking role or advise such persons. (Docket #175 at 2). Moreover, according to Plaintiffs, the protective order contains a patent prosecution bar, so that if Agnew and Alley receive Chervon's confidential information, they will be barred from participating in drafting or amending patent claims. *Id.*

On the record presently before it, the Court finds that it must grant Chervon's motion. First, the Court agrees with Chervon that the protective order plainly excludes an attorney not employed by a party. *See* (Docket #39 at 5); *Mixing Equip.*, 1986 WL 9264, at *1. Perhaps Plaintiffs would have preferred the protective order to say something else, but it is notable that they joined with Chervon to request that the Court enter the order. (Docket #38). No creative reading of the protective order can bring Agnew and Alley within its purview. Moreover, if Plaintiffs truly believed that Agnew and Alley act as in-house counsel for Techtronic, so as to bring them within the scope of the protective order, they could have offered their sworn statements to that effect rather than the unsworn opinions of counsel. *See* Civ. L. R. 7(h)(2) (permitting both the movant and non-movant to submit affidavits in connection with expedited motion practice). Nor did Plaintiffs offer any specific reason why these two men must be included in their litigation team, although a showing of necessity would have aided their cause. *See U.S. Steel*, 730 F.3d at 1468 (noting that forcing an opponent to retain new counsel late in a case would cause extreme hardship).

Second, though the Court need not reach the issue, it observes that even were it to assess Agnew and Alley's job responsibilities under *Deutsche Bank*, it would likely find that they should be denied access to Chervon's confidential information. For Alley, this is fairly clear, since Plaintiffs admit that he is a patent attorney who engages in patent clearance, manages the patent portfolio for his company, and advises his colleagues on patent-related matters arising inside and outside of litigation. As to Agnew, although he is a high-level manager of intellectual property for his business, he also advises the company on "strategy" related to such matters. If that word is appreciated in its full scope, it quite reasonably includes advising his client on new research paths and what patent protection should be pursued for a given invention. *See Deutsche Bank*, 605 F.3d at 1379–80. Such advice could, in turn, be influenced, even innocently, by the technical data Agnew learned from Chervon in the context of this lawsuit. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) (evaluating whether in-house counsel could "lock up trade secrets in his mind, safe from inadvertent disclosure"); *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) (noting danger that in-house counsel could be influenced by confidential information she learned during the lawsuit); *Datatrak Intern., Inc. v. Medidata Solutions, Inc.*, No. 1:11 CV 458, 2011 WL 3652444, at *2 (N.D. Ohio Aug. 19, 2011) (finding that in-house counsel was a competitive decisionmaker where he provided a wide range of legal and corporate development advice, despite his averment that he did not participate in patent prosecution or technical research).

The Court is further persuaded that Plaintiffs cannot simultaneously provide Chervon with bare-bones descriptions of the responsibilities of these two men and, in the same breath, claim that they clearly have no

responsibilities touching on competitive decisionmaking. To adopt Plaintiffs' position incentivizes unhelpful generality, and Plaintiffs cannot wield that generality to avoid the rule of *Deutsche Bank*. Put differently, while Plaintiffs accuse Chervon of speculating as to the nature of Agnew and Alley's duties, *see* (Docket #175 at 3), such speculation is precipitated by Plaintiffs' choice to describe their duties with vagueness. As a result, Chervon's motion will be granted.

Accordingly,

**IT IS ORDERED** that Chervon's expedited motion for a protective order (Docket #166) be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 21st day of April, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge