# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, et al., <br><br> *Plaintiffs*, <br> v. <br><br> CHERVON NORTH AMERICA, INC., <br><br> Defendant. | Case No. 2:14-CV-01289 <br><br> Hon. J.P. Stadtmueller |
| MILWAUKEE ELECTRIC TOOL CORPORATION, et al., <br><br> *Plaintiffs*, <br> v. <br><br> POSITEC TOOL CORPORATION and POSITEC USA, INC., <br><br> *Defendants*. | Case No. 2:14-CV-01295 <br><br> Hon. J.P. Stadtmueller |
| MILWAUKEE ELECTRIC TOOL CORPORATION, et al., <br><br> *Plaintiffs*, <br> v. <br><br> SNAP-ON INCORPORATED, <br><br> *Defendant*. | Case No. 2:14-CV-01296 <br><br> Hon. J.P. Stadtmueller |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO COMPEL PRODUCTION OF DOCUMENTS
RELATED TO SUBJECT MATTER OF LAWSON DECLARATION**

# TABLE OF EXHBITS

| Exhibit No.[1] | Description |
|---|---|
| 1 | 3/21/2017 N. Strickland Letter to J. Law |
| 2 | 4/19/2017 H. Santhanam Letter to J. Law |
| 3 | 4/7/2017 P. Stockhausen Letter to N. Strickland |
| 4 | Excerpt of Snap-on Petition for *Inter Partes* Review (IPR), IPR2015-1242 at Paper 1 ("Snap-on IPR Petition") |
| 5 | Excerpt of Institution Decision in the Snap-on IPRs, IPR2015-1242 at Paper 10 ("Snap-on Inst. Decision") |
| 6 | Excerpt of Institution Decision in Chervon/Positec IPRs, IPR2015-0596 at Paper 24 ("Chervon Inst. Decision") |
| 7 | Excerpt of the public version of the Patent Owner Response that Milwaukee Electric Tool Corp. (MET) filed in the Snap-on IPRs, IPR2015-1242 at Paper 25 ("MET's Resp.") |
| 8 | Declaration of Attorney Edward Lawson that MET submitted in the Snap-on IPRs, IPR2015-1242 at Ex. 2229 ("Lawson Decl.") |
| 9 | Meeting minutes that MET submitted in the Snap-on IPRs, IPR2015-1242 at Ex. 2190 [RESTRICTED] |
| 10 | Meeting notes that MET submitted in the Snap-on IPRs, IPR2015-1242 at Ex. 2231 [RESTRICTED] |
| 11 | First Invention Disclosure that MET submitted in the Snap-on IPRs, IPR2015-1242 at Ex. 2188; introduced as Exhibit 92 at deposition of Jay Rosenbecker [RESTRICTED] |
| 12 | Second Invention Disclosure that MET submitted in the Snap-on IPRs, IPR2015-1242, Ex. 2192; introduced as Exhibit 93 at deposition of Jay Rosenbecker [RESTRICTED] |
| 13 | Declaration of Jay Rosenbecker that MET submitted in the Snap-on IPRs (IPR2015-1242, Paper 2225), |
| 14 | Excerpt of Transcript of Deposition of Jay Rosenbecker, dated April 26, 2017 ("Rosenbecker Tr.") [RESTRICTED] |
| 15 | Plaintiffs' Fourth Amended Privilege Log to Chervon, dated May 9, 2017 [RESTRICTED] |
| 16 | 4/27/17 A. Meerkins Letter to J. Law |

---

[1] Exs. 1-16 refer to the exhibits attached to the Santhanam declaration submitted herewith.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
    237 F.R.D. 618 (N.D. Cal. 2006) ................................................................................ 1, 3, 5

*Fort James Corp. v. Solo Cup Co.*,
    412 F.3d 1340 (Fed. Cir. 2005) ....................................................................................... 1, 4

*Shukh v. Seagate Tech., LLC*,
    848 F. Supp. 2d 987 (D. Minn. 2011) ......................................................................... 1, 3, 5

*In re Spalding Sports Worldwide, Inc.*,
    203 F.3d 800 (Fed. Cir. 2000) ......................................................................................... 1, 3

*In re VISX, Inc.*,
    18 F. App'x 821 (Fed. Cir. 2001) .................................................................................... 1, 4

Pursuant to Federal Rule of Civil Procedure 37, Defendants Chervon, Positec, and Snap-on jointly move this Court for an order (1) holding that Plaintiff Milwaukee Electric Tool Corp. ("MET") waived privilege as to the subject matter of a declaration by attorney Edward Lawson that MET filed in connection with the *inter partes* reviews (IPRs), and (2) compelling production of documents that fall within that subject matter and that MET is withholding on improper claims of attorney-client privilege. Counsel for the Defendants have raised this issue several times with counsel for MET. (Ex. 1, 3/21/17 Strickland Ltr. at 1; Ex. 2, 4/19/17 Santhanam Ltr. at 2–3; Ex. 16, 4/27/17 Meerkins Ltr.) Plaintiffs, however, disagree that any subject-matter waiver has occurred and have refused to produce the documents at issue. (Ex. 3, 4/7/17 Stockhausen Ltr.; Ex. 2, 4/19/17 Santhanam Ltr. at 2–3.) Therefore, Defendants respectfully seek this Court's intervention.[2]

It is well established that "a privilege holder 'cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.'" *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) (citation omitted) (finding subject matter waiver). That is, when a party "offer[s] his own or his attorney's testimony as to a specific [privileged] communication," such disclosure and reliance "constitutes a waiver as to all other communications on the same subject matter." *Id*. at 1351 (citations and quotations omitted); *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 628 (N.D. Cal. 2006) (holding reliance on privileged communications before the PTO constituted waiver as to all communications related to same subject matter). Moreover, as the Federal Circuit has recognized, invention disclosures submitted to patent counsel for the purpose of preparing and filing patent applications and related communications are protected by the attorney-client privilege. *See In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 805–06 (Fed. Cir. 2000). And the disclosure and reliance on such invention disclosures and communications results in waiver. *Shukh v. Seagate Tech., LLC*, 848 F. Supp. 2d 987, 992 (D. Minn. 2011) (holding reliance on invention disclosures constituted

---

[2] Because the documents at issue are relevant to each of the three related cases and in an effort to streamline the briefing process, Defendants have coordinated to submit a single motion.

1

waiver as to later communications related to those disclosures).  In this context, "[t]he privilege holder . . . has the burden of convincing the district court that it has not waived the privilege." *In re VISX, Inc.*, 18 F. App'x 821, 823–24 (Fed. Cir. 2001).

In its IPR petitions, Defendant Snap-on challenged the validity of the claims of the patents-in-suit based on (among others) the Fohr prior art reference, which was published on December 18, 2002.  (Ex. 4, Snap-on Petition at 6-7.)  The Patent Office's Patent Trial and Appeal Board (PTAB) instituted review in the Snap-on IPRs, finding that Fohr was in fact prior art based on the preliminary record and that the patents-in-suit were not entitled to claim priority to any of MET's provisional patent applications filed before January 17, 2003, because those earlier provisional applications do not even mention the 20 Amp Limitation.  (Ex. 5, Snap-on Inst. Decision at 6, 12 (adopting reasoning in Ex. 6, Chervon Inst. Decision).)  In an effort to overcome Fohr, MET argued in the Snap-on IPRs that Fohr is not prior art and attempted to establish an earlier priority date for the claimed invention, asserting that the named inventors purportedly conceived of a battery pack embodying the claimed invention (including the 20 Amp Limitation) as early as November 21, 2002, actually reduced it to practice as early December 12, 2002, and constructively reduced it to practice in provisional applications filed on January 17, 2003.  (Ex. 7, MET's Resp. at 10–15.)  To support its priority claim, MET submitted and relied on a declaration by its patent counsel, Edward Lawson of the law firm Michael Best & Friedrich LLP, who was involved in the prosecution of the patents-in-suit.  (Ex. 8, Lawson Decl.)

Significantly, in his declaration, Mr. Lawson discloses and discusses privileged communications that he, Ms. Egasti Miller (another attorney), and other patent counsel at Michael Best had with MET employees, including the named inventors, for the purpose of providing legal advice regarding the preparation and filing of patent applications.  (*Id.* ¶¶ 7–9.)  Mr. Lawson's declaration also describes meetings where they purportedly "discussed the [20A invention] disclosure . . . with the inventors," and attaches agendas, minutes, and notes that disclose discussions that occurred at these meetings and set out details exchanged between the attorneys and inventors while preparing patent applications.  (*E.g.*, *id.* ¶¶ 8–9, 25 (citing Exs. 9-

2

10 (IPR2015-1242 at Exs. 2190, 2231).) For example, meeting notes dated December 4, 2002 set out technical details exchanged between the attorneys and inventors, noting that they relate to the "disclosure from the last meeting." (Ex. 10, IPR2015-1242 Ex. 2231 at 2.) Mr. Lawson further attaches, and discusses, privileged invention disclosures (Ex. 8, Lawson Decl. ¶ 8; Exs. 11-12, Invention Disclosures) as well as patent counsel's invoices and time entries relating to discussions with the named inventors and the preparation of patent applications (Ex. 8, Lawson Decl. ¶¶ 10–24).[3] Relying on the substance of these privileged documents and communications, Mr. Lawson made various representations to the PTAB regarding when the claimed inventions were purportedly conceived and reduced to practice, all in support of the priority claims that MET made in the Snap-on IPRs. (Ex. 8, Lawson Decl. ¶¶ 5, 8.)

Nor can there be any dispute that, under well-established law, the meetings, discussions, and invention disclosures that Mr. Lawson references in his declaration are privileged. *See Spalding*, 203 F.3d at 805-06; *Shukh*, 848 F. Supp. 2d at 992; *Leland*, 237 F.R.D. at 628. Lest there be any doubt, when Defendants recently attempted to question named inventor Jay Rosenbecker regarding these meetings, discussions, and invention disclosures, MET's counsel made multiple privilege objections, prompting Mr. Rosenbecker at one point to state: "Well, isn't that protected information? Isn't that a client or attorney/client privilege? I don't know -- you're asking me what we talked about in these meetings, and I don't know if I can even say."[4] (Ex. 14, Rosenbecker Tr. 215:17–217:20.) When probed further, however, Mr. Rosenbecker confirmed

---

[3] In the Snap-on IPRs, MET also submitted declarations by the named inventors that similarly discuss these meetings with MET's patent counsel and the related invention disclosures. (*E.g.*, Ex. 13, Rosenbecker Decl. ¶ 8.) These inventor declarations each contain nearly identical language, which Mr. Rosenbecker explained was prepared entirely by MET's counsel and provided to him. (Ex. 14, Rosenbecker Tr. 220:24–221:15.)

[4] Plaintiffs' counsel did not object to the introduction of the declarations by Mr. Lawson and the named inventors at Mr. Rosenbecker's deposition. And despite raising objections on the grounds of privilege when Mr. Rosenbecker was questioned about his interactions with patent counsel during preparation of MET's patent applications, Plaintiffs' counsel maintained that "[e]very objection based on privilege [raised at Mr. Rosenbecker's deposition] was coupled with an instruction that the witness could answer the question subject to not revealing the content" of privileged discussions. (Ex. 14, Rosenbecker Tr. 222:18–223:4.)

that the purpose of the discussions and invention disclosures was to communicate the claimed invention to MET's patent counsel in order to prepare patent applications. (*Id.* at 215:17-220:14; *see also* Ex. 13, Rosenbecker Decl. ¶ 8.) Yet, Plaintiffs have withheld as privileged and identified on their privilege log documents that appear to correspond to the ***very same invention disclosures*** that Mr. Lawson references in his declaration and already submitted to the PTAB, as well as other documents and communications that were generated in the lead up to the filing of MET's January 17, 2013 provisional applications that MET claims is a constructive reduction to practice of the claimed invention. (Ex. 15, Pls.' 4th Am. Privilege Log, PL00114.)

MET misguidedly argues that Mr. Lawson's declaration does not contain privileged information, stating that Mr. Lawson "specifically crafted the declaration and its disclosures to avoid any waiver of privilege and addressed only issues of timing." (Ex. 3, Stockhausen Ltr.) But whatever instructions MET may have given to Mr. Lawson in preparing his declaration, those instructions cannot change what Mr. Lawson actually disclosed in connection with his declaration and what MET actually relied on to support its priority claims in the Snap-on IPRs, which comprise information that is undeniably privileged. To be sure, Mr. Lawson addresses issues of timing in his declaration, but importantly, he does so based on his recollection and review of the substance of privileged documents and communications. Indeed, Mr. Lawson's sole purpose for describing invention disclosures and various meetings and discussions in his declaration was to draw a conclusion based on the substance of these privileged documents and communications that "the inventors of the Patents-at-Issue [purportedly] conceived of the invention at least as early as November 21, 2002, and were diligent in constructively reducing the invention to practice by filing a patent application on January 17, 2003." (Ex. 8, Lawson Decl. ¶ 5; *see also id.* ¶ 8.)

Ultimately, MET made a strategic choice in submitting and relying on the privileged information in Mr. Lawson's declaration and accompanying materials to support its priority claims in the Snap-on IPRs—presenting a classic example of privilege waiver. Having used this privileged information as a sword before the PTAB, MET has waived privilege as to the subject

4

matter of Mr. Lawson's declaration and cannot now use privilege as a shield to withhold discovery of information that falls within that same subject matter. *See Fort James*, 412 F.3d at 1350–51 (holding waiver broadly applied to all communications concerning inventor's development of the invention); *In re VISX, Inc.*, 18 F. App'x at 824 ("By making what amounted to a limited disclosure of the contents of attorney-client communications for strategic purposes, [the patentee] waived its privilege concerning communications . . . on the same subject matter."); *see also Leland*, 237 F.R.D. at 628; *Shukh*, 848 F. Supp. 2d at 992. At a minimum, Defendants are entitled to discovery on the subject matter of Mr. Lawson's declaration and accompanying documents in order to probe MET's priority claims, which are equally relevant to the district court litigations, where MET opposes Defendants' invalidity arguments.

Therefore, this Court should find that MET has waived privilege as to all communications that MET's patent counsel had

(a) with individuals at MET including the named inventors,

(b) between November 21, 2002 (MET's alleged date of conception) and January 17, 2003 (MET's alleged date of constructive reduction to practice), and

(c) that relate to the preparation of the patent applications directed to the alleged invention.

The scope of this waiver includes at least the following 41 documents set forth in Plaintiffs' Fourth Amended Privilege Log that Plaintiffs have provided to Defendant Chervon: PL00113 through PL00128; PL00131; PL00133 through PL00157; PL02712 through PL02714; PL02729; and PL02754.[5] (Ex. 15, Pls.' 4th Am. Privilege Log to Chervon (highlighting improperly withheld documents).)

---

[5] The referenced privilege log numbers refer to entries on Plaintiffs' privilege log to Chervon, which are exemplary. Additional documents or documents that are identified with different numbers on Plaintiffs' privilege logs to Snap-On and Positec may fall within the scope of this motion.

5

| | |
|---|---|
| **Dated:** May 18, 2017 | Respectfully submitted, |
| By: */s/Christopher R. Liro*<br>   Christopher R. Liro (1089843)<br>   Andrus Intellectual Property Law, LLP<br>   100 E. Wisconsin Avenue, Suite 1100<br>   Milwaukee, WI 53202<br>   Phone: (414) 271-7590<br>   Fax: (414) 271-5770<br>   *chris.liro@andruslaw.com*<br><br>   Russell E. Levine, P.C.<br>   Hari Santhanam<br>   Nyika Strickland<br>   KIRKLAND & ELLIS LLP<br>   300 North LaSalle Street<br>   Chicago, Illinois 60654<br>   Telephone: (312) 862-2000<br>   Facsimile: (312) 862-2200<br>   *rlevine@kirkland.com*<br>   *hsanthanam@kirkland.com*<br>   *nstrickland@kirkland.com*<br><br>   Christa J. Laser<br>   KIRKLAND & ELLIS LLP<br>   655 15th St. NW<br>   Washington, D.C., 20005<br>   Telephone: (202)-879-5000<br>   Facsimile: (202)-879-5200<br>   *christa.laser@kirkland.com*<br><br>***Attorneys for Chervon North America, Inc.*** | By: */s/Robert H. Eichenberger*<br>   Henry S. Alford<br>   Robert J. Theuerkauf<br>   Robert H. Eichenberger<br>   MIDDLETON REUTLINGER<br>   401 S. Fourth Street, Suite 2600<br>   Louisville, Kentucky 40202<br>   Phone: (502) 584-1135<br>   Fax: (502) 561-0442<br>   *halford@middletonlaw.com*<br>   *rtheuerkauf@middletonlaw.com*<br>   *reichenberger@middletonlaw.com*<br><br>   Kenneth R. Nowakowski<br>   Wisconsin Bar ID No. 1015226<br>   HUSCH BLACKWELL, LLP<br>   555 East Wells Street, Suite 1900<br>   Milwaukee, Wisconsin 53202-3819<br>   Phone: (414) 978-5517<br>   Fax: (414) 223-5000<br>   *ken.nowakowski@huschblackwell.com*<br><br>***Attorneys for Positec Tool Corporation and Positec USA, Inc.***<br><br><br>By:  */s/Andrew M. Meerkins*<br>   David R. Cross<br>   Michael T. Piery<br>   QUARLES & BRADY LLP<br>   411 East Wisconsin Avenue, Suite 2350<br>   Milwaukee, Wisconsin 53202-4426<br>   Telephone: (414) 277-5000<br>   Facsimile: (414) 271-3552<br>   *david.cross@quarles.com*<br>   *michael.piery@quarles.com*<br><br>   Lynn H. Murray<br>   Hugh A. Abrams<br>   George R. Dougherty<br>   Andrew M. Meerkins |

Peter F. O'Neill
Shook, Hardy & Bacon L.L.P.
111 S. Wacker Dr., Suite 5100
Chicago, IL  60606
Phone: (312) 704-7700
Fax: (312) 558-1195
lhmurray@shb.com
habrams@shb.com
gdougherty@shb.com
ameerkins@shb.com
pfoneill@shb.com

***Attorneys for Snap-on Inc.***