# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, METCO BATTERY TECHNOLOGIES LLC, AC (MACAO COMMERCIAL OFFSHORE) LIMITED, and TECHTRONIC INDUSTRIES CO. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> CHERVON NORTH AMERICA INC., <br><br> Defendant. | Case No. 14-CV-1289-JPS <br><br><br><br><br><br> **ORDER** |

    Defendant Chervon North America Inc. ("Chervon") filed a motion to compel discovery responses on April 17, 2017. (Docket #177). In its motion, Chervon accuses Plaintiffs of failing to adequately respond to several of its interrogatories. Plaintiffs' general response is that the information Chervon seeks is either already in its possession or will be a part of Plaintiffs' expert disclosures, which are not yet due. Chervon's motion is fully briefed and, for the reasons stated herein, the Court will largely deny the motion.

**1.    STANDARD OF REVIEW**

    District courts have broad discretion in deciding matters relating to discovery. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646–47 (7th Cir. 2001); *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993). Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The

information sought need not itself be admissible to be discoverable. *Id.* In considering matters of proportionality, the Rule directs courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* While these proportionality concerns have always been a part of the Rule, they now enjoy pride of place after the 2015 Rule amendments. *See* Fed. R. Civ. P. 26 advisory committee notes, 2015 Amendment; *Elliot v. Superior Pool Prods., LLC*, No. 15-cv-1126, 2016 WL 29243, at *2 (C.D. Ill. Jan. 4, 2016).

## 2. DISCUSSION

The interrogatories at issue are Nos. 1, 3, 5–7, and 9. At the outset, the Court notes that the issues Chervon raised herein were mostly resolved by Plaintiffs' supplemental responses served after the motion was filed. Yet as made clear in its reply brief, Chervon has not relented in any aspect of the motion. Nevertheless, in order to press onward to resolution of these matters, in view of the fast-approaching dispositive motion deadline, the Court is satisfied that the parties adequately met and conferred with respect to the issues raised in this motion as required by the federal and local rules. *See* Fed. R. Civ. P. 37(a)(1); Civ. L. R. 37. Thus, the Court will turn to substantive disputes over the interrogatories, addressing each in turn below.

### 2.1   Interrogatory No. 1

Interrogatory No. 1 is a contention interrogatory, seeking to learn Plaintiffs' legal theories and the factual bases for their infringement claims. *See* Fed. R. Civ. P. 33(a)(2) (allowing interrogatories to seek "opinion[s] or contention[s] that relat[e] to fact or the application of law to fact"); *Tragozanos v. City of Algona*, No. 09–C–1028, 2011 WL 2650852, at *1 (E.D. Wis. July 6, 2011) ("Contention interrogatories are used to elicit a description of the opposing party's theory and proof to be employed.") (citing *Zenith Elecs. v. WH–TV Broad. Corp.*, 395 F.3d 416, 420 (7th Cir. 2005)). As relevant here, Interrogatory No. 1 requests that Plaintiff map each limitation of each claim of the relevant patents onto each allegedly infringing product. (Docket #179-2 at 6–7). In response to this portion of the interrogatory, Plaintiffs provided charts which contain a side-by-side comparison of the limitations of each claim in the relevant patent and each accused product. *Id.*; (Docket #179-3 at 2–3).

Chervon rejoins that these charts are unhelpful because they merely parrot the claim language twice, especially when it comes to the critical "20 Amp Limitation." (Docket #178 at 11–13). For instance, with respect to Chervon's Kobalt K18-LB30A battery pack, Plaintiffs say that "[t]he plurality of Sanyo UR18650W2 battery cells of the Kobalt K18-LB30A battery pack are capable of producing an average discharge current greater than or equal to approximately 20 amps," making it equivalent to the limitation in claim 1 of the '290 patent requiring that "the battery cells [be] capable of producing an average discharge current greater than or equal to approximately 20 amps." (Docket #179-3 at 4).

Plaintiffs did not originally report any test results confirming that this battery has in fact been determined to meet the 20 Amp Limitation. Yet during this litigation and during *inter parties* review before the U.S. Patent and Trademark Office, Plaintiffs have relied on testing performed by one of their experts, Dr. Mehrdad Ehsani ("Ehsani"). In connection with the prior round of summary judgment briefing in 2015, Plaintiffs submitted supplemental charts that more specifically connect the infringing products to the facts learned in discovery. (Docket #91-1). Further, Ehsani submitted a declaration which provides some detail about Plaintiffs' interpretation of the 20 Amp Limitation, the tests Ehsani performed as they relate to that limitation, and the results of those tests. *See* (Docket #91-3); (Docket #185 at 3–4). Nevertheless, Chervon is unsatisfied, claiming that Plaintiffs never provided the raw data or methodologies Ehsani employed in his testing. Attempts to subpoena Ehsani's work from Plaintiffs have failed, and ongoing meet-and-confer efforts have yielded no supplemental responses. Without more specificity, Chervon argues, it cannot prepare for expert discovery. (Docket #178 at 12–13). Chervon contends that it should not have to wait for most of fact discovery to conclude before it learns the contentions underlying Plaintiffs' claims, especially when such information is routinely provided at the beginning of discovery in patent cases. *Id.* at 14.

Plaintiffs respond by noting that they provided an additional supplemental response to Interrogatory No. 1 after Chervon filed the instant motion. (Docket #185 at 5). The supplemental response incorporates the supplementation previously included in Plaintiffs' 2015

summary judgment submissions, as well as citations to the evidence Plaintiffs believe support a finding that each limitation is met with respect to each accused product. *Id.* It also includes a narrative description of Plaintiffs' interpretation of the 20 Amp Limitation, Ehsani's testing methodology, and a promise to "identify the underlying test data. . .as soon as production of that data is complete." *Id.* at 5–6, 16–17; (Docket #186-4 at 8–10). Plaintiffs also maintain that they should not be required to prove their infringement claims via an interrogatory response, especially not before the expert opinions underlying the contentions are due to be disclosed. (Docket #185 at 13).

In its reply, Chervon insists that Plaintiffs' recent supplementation does not address its concerns about the methodologies and data Ehsani employed to assess the infringing products against the 20 Amp Limitation. (Docket #196 at 6–7). Specifically, Ehsani's averments do not, in Chervon's view, sufficiently describe "who performed all of the tests, what underlying testing protocols and methodologies Plaintiffs used, including the number times each battery pack was tested or the voltage and temperature thresholds (if any) that were used, or all of the raw data from their testing." *Id.* Chervon also reports that Plaintiffs have not made good on their promise to start producing any of the underlying test data. *Id.* at 7.

Whether Plaintiffs' existing response to Interrogatory No. 1 is adequate is influenced by the decisions of other district courts around the country dealing with similar questions. Preliminarily, however, it should be noted that some of these districts—the Eastern District of Texas and the

Northern District of California in particular—have adopted local rules pertinent to contention interrogatories in patent infringement actions. *See B-K Lighting, Inc. v Vision3 Lighting*, 930 F. Supp. 2d 1102, 1134 (C.D. Cal. 2013). These rules often require very early disclosure of infringement contentions and limit the plaintiff's ability to amend them later. *See id.*

The policies animating those local rules—crystallizing legal theories early and ensuring those theories stay consistent throughout the case—are, to be sure, of significant value in ensuring expeditious trial preparation. *See id.* But such rules do not exist in this District, and so the Court can only apply the underlying principles to the extent they are consistent with the parties' obligations under the Federal Rules of Civil Procedure, which control here. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365–66 (Fed. Cir. 2006) (noting that the Federal Rules "replaced a system in which the issues had to be conclusively defined at the outset of litigation through the pleadings, with a system that relied on discovery and pretrial hearings to gradually identify the precise issues in dispute as more information became available"). Thus, at the outset, the Court must set aside Chervon's belief that it is entitled to early disclosure of Plaintiffs' infringement contentions simply because this is a patent case. While that may be true in other Districts, it is not so here.[1]

---

[1]Notable as well, the Court's trial scheduling order has no provision specifically directed at the issue of patent infringement contentions. *See* (Docket #31, #137). This is consistent with the Court's belief that discovery and subject-matter-specific issues are best left to the good offices of counsel, working cooperatively to ensure the speedy and inexpensive resolution of the parties' disputes. *See* (Docket #28 at 2) (leaving parties to confer regarding all other deadlines not specified in the scheduling order). This means that *B-K Lighting*,

Turning to the substance of Plaintiffs' existing response, the Court finds it sufficient at this juncture, even were the Court to apply the more stringent disclosure requirements of the local rules in other Districts. First, Plaintiffs identified each allegedly infringing product and lined up each limitation of each claim against each product. *See Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 707–08 (E.D. Tex. 2008). It is clear that Plaintiffs' original response would have been insufficient had it not been later supplemented, since it "merely parroted the asserted claim language and failed to explain how the accused products infringed the asserted patents." *Id.* at 711; *Droplets, Inc. v. Amazon.com, Inc.*, No. C12–03733 HRL, 2013 WL 1563256, at *2 (N.D. Cal. Apr. 12, 2013). But now Chervon has the benefit of Ehsani's declaration, which explains in narrative form the basic contours of the testing he performed and the results he obtained. *See Droplets*, 2013 WL 1563256, at *3–4 (contentions were insufficient where plaintiff parroted claim language and attached relevant evidence without any explanation connecting the evidence to its infringement theory). Although not each and every fact underlying his conclusions has yet been disclosed, that disclosure will be made in expert discovery.

Thus, this case is unlike *Shared Memory*, where the court found that the plaintiff had provided "vague contentions and conclusory statements" that were not consistent with its obligations under the court's local infringement contention rule. *Shared Memory Graphics LLC v. Apple, Inc.*,

---

930 F. Supp. 2d at 1136, referenced by Chervon, is inapposite, as the court there determined whether the plaintiff's infringement contention amendments, which were late under the court's scheduling order, should be permitted. Here, there is no such deadline.

812 F. Supp. 2d 1022, 1026 (N.D. Cal. 2010). The information Plaintiffs have provided is adequate to give Chervon reasonable notice of the grounds for Plaintiffs' belief that infringement exists. *Id.* at 1025. Further, they associate the evidence at hand with Plaintiffs' interpretation of the 20 Amp Limitation. *Id.* (requiring contentions to "map specific elements of Defendants' alleged infringing products onto the Plaintiff's claim construction"). Indeed, Plaintiffs' response appears satisfactory under the view of the court in *Carver v. Velodyne Acoustics, Inc.*, 2092 F.R.D. 273, 274 (W.D. Wash. 2001), cited by Chervon, because Plaintiffs provided a chart specifying how each limitation of each claim corresponds to each accused product, as well as their own claim construction to help connect the products to Plaintiffs' theory of infringement.

Chervon's contention interrogatories are directed at learning Plaintiffs' theory connecting facts to the applicable law; they are not a way to end-run around expert disclosure deadlines. Nor are Plaintiffs required to prove their infringement case in response to an interrogatory. *Droplets*, 2013 WL 1563256, at *2 (local patent infringement contention rules do not "'require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case'") (quoting *DCG Sys. v. Checkpoint Tech., LLC*, Case No. 11–cv–03729–PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012)). Having received sufficient insight into Plaintiffs' legal theories, particularly as to the 20 Amp Limitation, Chervon can ask no more. *Linex*, 628 F. Supp. 2d at 713 ("Infringement contentions 'are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process.'") (quoting

*STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004)). Chervon has the information it needs to craft a response to these contentions and elicit expert testimony to support its response, whether or not it agrees with the methodologies employed or Plaintiffs' view of the 20 Amp Limitation. *Id.*; *Shared Memory*, 812 F. Supp. 2d at 1025 (finding that although the defendants thought the plaintiff's contentions to be without merit, "[t]his is precisely what [infringement contentions] are designed to accomplish," and they "could well set up an early motion for summary judgment or partial summary adjudication on affected claims"). Thus, Chervon's motion to compel with respect to Interrogatory No. 1 must be denied.

**2.2** **Interrogatories Nos. 3, 5–7**

Interrogatories Nos. 3, 5, 6, and 7 are not closely related in subject matter but all drew a very similar response from Plaintiffs—namely, referring Chervon to the documents they produced in response to its requests for production. Federal Rule of Civil Procedure 33(d) allows this sort of response, but Chervon contends that it cannot easily locate the documents because Plaintiffs referred to them by metadata tag rather than Bates numbers. *See* Fed. R. Civ. P. 33(d)(1) (noting that a party must specify response records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could"). Chervon requests that Plaintiffs identify their documents by Bates number and, moreover, provide fulsome responses to those contention-seeking portions of the interrogatories which cannot simply be answered by reference to documents alone. (Docket #178 at 17–18); *Shorter v. Baca*,

No. CV12-7337-JVS (AGR), 2013 WL 12133826, at *4 (C.D. Cal. Nov. 1, 2013) (recognizing identification by Bates or production number as an ordinary method to specify documents to be reviewed under Rule 33(d)).

Chervon's request has largely been mooted by Plaintiffs' supplemental responses made after its motion was filed. Those responses now incorporate specific Bates references for all responsive documents. (Docket #185 at 21–23). Without deciding whether a party must always supply Bates numbers to comply with Rule 33(d), the Court finds that Plaintiffs' compliance with Chervon's request in this regard moots this portion of Chervon's motion.[2]

This leaves the second of Chervon's complaints—that Plaintiffs should provide additional narrative response to the parts of these interrogatories that cannot be answered by producing documents. According to Chervon, these include the portions of these requests that seek "information regarding Plaintiffs' first awareness of alleged infringement, identification of most knowledgeable persons, and contentions [that] cannot be determined by reference to documents alone." (Docket #196 at 12).

The Court finds Chervon's position unconvincing. Chervon offers no more than a perfunctory suggestion that further supplementation is

---

[2]In their supplemental responses, Plaintiffs incorporate by reference their earlier responses, apparently for the sake of completeness. *See, e.g.*, (Docket #186-4 at 14–18). Chervon continues to complain about this, asserting that because the prior responses contain references to documents identified only by metadata tags and not Bates numbers, Plaintiffs might rely on metadata tags in future citations. (Docket #196 at 12). The Court does not share Chervon's fear, particularly in light of Plaintiffs' willingness to provide the relevant Bates numbers.

needed. It gives no insight into what more it expects to see in Plaintiffs' response or why Plaintiffs' existing narratives and objections are inadequate. For instance, after the parties' meet-and-confer in late March but prior to Chervon's motion, Plaintiffs supplemented their original response to Interrogatory No. 3, which seeks their contentions about Chervon's willful infringement, with a narrative response. (Docket #186-4 at 16–17). Chervon does not set forth specific challenges to this supplemental response.

Similarly, with respect to Interrogatory No. 7, which requests information about the tests and methodologies employed to find that the accused products meet the 20 Amp Limitation, Plaintiffs' post-motion supplemental response objects to parts of the interrogatory and references their response to Interrogatory No. 1, which in turn explains the tests Plaintiffs performed. *Id.* at 6–10, 26–28. Absent some explanation why this supplemental response is itself inadequate, the Court finds no basis to compel further responses. *See Design Basics, Inc. v. Granite Ridge Builders, Inc.*, No. 1:06-CV-72, 2007 WL 1830809, at *2 (N.D. Ind. June 21, 2007) (party seeking discovery has the burden to show that the response is evasive or incomplete) (citing James Wm. Moore, 7 Moore's Fed. Prac. § 37.05[5] (3d ed.)). This is especially appropriate where Chervon has not shown why following Plaintiffs' references to other interrogatory responses, such as Interrogatory No. 3 pointing to Interrogatory No. 10, fails to compensate for a lack of detail in the response at issue. *Compare* (Docket #186-4 at 15–17), *with* (Docket #186-5 at 8–11).[3]

---

[3]For Interrogatory No. 3 in particular, the Court notes that nowhere in

Likewise, although Plaintiffs provided little narrative response to Interrogatories Nos. 5 and 6, *id.* at 19–26, Chervon does not claim that Plaintiffs' extant responses, references to other responses, or objections to providing additional narrative are without merit, *id.* at 19–22. Interrogatory No. 5 seeks information about when Plaintiffs first learned of the alleged infringement and what testing was initially done, while Interrogatory No. 6 asks Plaintiffs to explain their contentions supporting their request for pre-suit compensatory damages, including when Plaintiffs provided notice to Chervon of the patents-in-suit and how Plaintiffs and their licensees complied with the marking requirements of 35 U.S.C. § 287. *Id.* Faced with Chervon's conclusory request, the Court will not try to speculate as to what more it wants or whether any valid objections stand in the way. Thus, the Court finds that Chervon's motion as to these aspects of these interrogatories is without merit.

### 2.3 Interrogatory No. 6

Chervon next raises a separate deficiency in Plaintiffs' response to Interrogatory No. 6. As noted above, that interrogatory seeks information about Plaintiffs' claim for pre-suit damages, including details regarding Plaintiffs' licensees marking their products with the patents-in-suit. Pursuant to 35 U.S.C. § 287, a plaintiff can recover pre-suit damages only

---

Plaintiffs' response to that interrogatory, nor in the referenced response to Interrogatory No. 10, do Plaintiffs actually identify the persons most knowledgeable about the subject matter of Interrogatory No. 3, as it requests. But again, Chervon does not take the time to demonstrate to the Court why this sort of information is not subject to one of Plaintiffs' objections or covered in an existing response—including that this will be the subject of expert discovery. The Court will not analyze these matters *sua sponte*.

when a licensee selling the product consistently and continuously marks it with the applicable patent. *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994).

Chervon asserts that Plaintiffs have refused to provide marking information about their licensees. (Docket #178 at 15). Plaintiffs say that in between the meet-and-confer and the filing of the instant motion, they supplemented this response to provide the necessary information. (Docket #185 at 24–26). That supplemental response concedes that Plaintiffs and their licensees did not mark products embodying the '173 and '510 patents, (Docket #186-4 at 24),[4] and it references a September 2015 declaration by Elizabeth Egasti Miller ("Miller"), General Counsel to Plaintiff Milwaukee Electric Tool Corporation, that explains that Plaintiffs' licensees were required by contract to mark relevant products with the '290 patent, (Docket #91-36). Chervon believes that this supplemental response is still inadequate as to the '290 patent, since the Miller declaration only shows that Plaintiffs' licensees were obligated under their licensing agreements to mark the products, not whether, when, and how the products were actually marked. (Docket #196 at 10–11).

The Court agrees with Chervon that Miller never describes how and when products were marked, only that licensees were supposed to be marking and that Plaintiffs monitored their licensees to ensure that this was occurring. *See* (Docket #91-36 ¶¶ 12–17). However, the Court sees no

---

[4]Plaintiffs maintain that they are nevertheless entitled to pre-suit damages because Chervon had actual notice of its infringement of these patents, (Docket #185 at 26 n.9), but the merit of this contention is irrelevant to resolving the present discovery dispute.

reason to compel a further response to the interrogatory at this time. Plaintiffs are well aware of their burden to prove that marking occurred as required by Section 287, *see* (Docket #185 at 25); if they believe the Miller declaration is sufficient to meet their burden, that is their choice. Moreover, Chervon did not explain whether the numerous documents referenced in this response, (Docket #186-4 at 25–26), fill in this possible gap left by Miller's declaration. As a result, the Court will deny the motion with respect to this aspect of Interrogatory No. 6.

### 2.4 Interrogatory No. 9

Finally, there is Interrogatory No. 9, which requests Plaintiffs to provide their damages contentions, including the theory of damages and a calculation thereof. The request further seeks analysis of the bases for Plaintiffs' damages, depending on what type of damages theory is used— *e.g.*, lost profits, reasonable royalty, or both. Finally, the interrogatory asks Plaintiffs to state whether they seek pre-judgment interest and, if so, the rate and how the rate was determined.

Plaintiffs originally objected and provided no substantive response, claiming that they would "provide information in response to this Interrogatory and expert disclosures in accordance with the form and timing required by the Federal Rules of Civil Procedure and the applicable Orders set by the Court." (Docket #186-5 at 7). Chervon says that it needs the factual bases for Plaintiffs' damages claims so that it can engage in expert discovery on those issues. (Docket #178 at 15). Plaintiffs assert that Chervon's interrogatory essentially seeks their damages expert report before the expert disclosure deadline. (Docket #185 at 26). Nevertheless,

they provided a supplemental response after Chervon's motion was filed which references specific Bates-numbered documents supporting their claimed damages, including documents related to Plaintiffs' licensing agreements, its sales and financial data, and Chervon's sales and financial data. *Id.* at 27; (Docket #186-5 at 7–8). Plaintiffs maintain that any further specificity about their method for calculating damages is reserved for expert discovery. (Docket #185 at 27).

The Court finds that Plaintiffs' supplemental response is mostly sufficient. Plaintiffs have identified with specificity the documents supplying the facts supporting their damages claim. Missing from their response, however, is some basic identification of their damages theory.[5] Although a precise assessment of how the facts connect to the applicable legal standard or a calculation of the ultimate damages claims can await expert analysis, the legal theory of damages is capable of identification without the expert's help. *See Mobile Storage Tech., Inc. v. Fujitsu Ltd.*, No. C 09-03342 JF (PVT), 2010 WL 1292545, at *1 (N.D. Cal. Mar. 31, 2010); *see also U.S. ex rel. Tyson v. Amerigroup Ill., Inc.*, 230 F.R.D. 538, 543–44 (N.D. Ill. 2005) (observing that damages contention interrogatories are commonplace and appropriate under the liberal discovery Rules). This was the reasoning of *Robert Bosch*, cited by Plaintiffs, which held that the plaintiff need not provide a complex, multi-factor damages analysis because

---

[5]Plaintiffs note in the brief that they do not seek lost-profits damages. (Docket #185 at 27). Although Plaintiffs do not say so expressly, this admission leads the Court to conclude that Plaintiffs are proceeding under a reasonable-royalty theory, which requires analysis of the factors announced in *Georgia Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

> [d]isclosing damages amounts and the manner in which those amounts were calculated requires too detailed of an analysis and explanation for an interrogatory response. Defendants have been placed on notice of the two damages theories Bosch intends to pursue. The precise details of those theories should be reserved for expert discovery[.]

*Robert Bosch, LLC v. Snap-On, Inc.*, No. 12-11503, 2013 WL 1703328, at *4 (E.D. Mich. Apr. 19, 2013); *see also Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02 C 5893, 2004 WL 2108410, at *2 (N.D. Ill. Sept. 21, 2004) (in complex Securities Act case, defendants were entitled to learn in a contention interrogatory the plaintiffs' "general theory of damages" and "documents demonstrating" those damages, but not "the exact damages formula"). The same result should obtain here. Thus, the Court will order Plaintiffs to further supplement their response to Interrogatory No. 9 and identify their damages theory or theories.

### 3. CONCLUSION

For the reasons stated above, the Court finds that Chervon's motion to compel is in most respects without merit. However, the Court directs Plaintiffs to supplement their response to Interrogatory 9 as explained above within seven (7) days of this Order.

Accordingly,

**IT IS ORDERED** that Defendant Chervon North America Inc.'s motion to compel (Docket #177) be and the same is hereby **GRANTED in part** and **DENIED in part** as stated herein; and

**IT IS FURTHER ORDERED** that Plaintiffs shall supplement their response to Chervon's Interrogatory 9, consistent with this Order, no later than **seven (7) days** from the date of this Order.

Dated at Milwaukee, Wisconsin, this 6th day of June, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge