# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, METCO BATTERY TECHNOLOGIES LLC, AC (MACAO COMMERCIAL OFFSHORE) LIMITED, and TECHTRONIC INDUSTRIES CO. LTD.,<br><br>Plaintiffs,<br>v.<br><br>CHERVON NORTH AMERICA INC.,<br><br>Defendant. | Case No. 14-CV-1289-JPS |
| MILWAUKEE ELECTRIC TOOL CORPORATION, METCO BATTERY TECHNOLOGIES LLC, AC (MACAO COMMERCIAL OFFSHORE) LIMITED, and TECHTRONIC INDUSTRIES CO. LTD.,<br><br>Plaintiffs,<br>v.<br><br>SNAP-ON INCORPORATED,<br><br>Defendant. | Case No. 14-CV-1296-JPS<br><br>**ORDER** |

In these two related patent infringement actions, Defendants have each filed identical motions to compel production of certain documents by Plaintiffs.[1] Defendants contend that one of Plaintiff Milwaukee Electric Tool Corporation's ("METCO") counsel, Edward Lawson ("Lawson"), filed a declaration in connection with the *inter partes* reviews ("IPRs") of Plaintiffs' patents in which he averred as to matters covered by Plaintiffs' attorney-client privilege. As such, Defendants believe that Plaintiffs waived the privilege as to the subject matter of Lawson's declaration, and

---

[1]This same motion was filed in a third related patent case previously pending before this Court, *Milwaukee Electric Tool Corporation et al. v. Positec Tool Corporation et al.*, Case No. 14-cv-1295-JPS (E.D. Wis.). The parties stipulated to the dismissal of that action on June 29, 2017, before this Order was issued.

they seek an order compelling production of documents related to that subject matter.

The attorney-client privilege protects confidential communications between attorney and client made for the purpose of obtaining legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege can be waived when, for instance, the client relies on such communications during legal proceedings. When this occurs, the client can be charged with waiving the privilege not only as to the particular communication that was disclosed, but as to all attorney-client communications concerning the same subject matter. *Matter of Continental Ill. Sec. Litig.*, 732 F.2d 1302, 1314 (7th Cir. 1984); *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1021 (7th Cir. 2012).[2] Put simply, "a privilege holder 'cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.'" *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) (quoting VIII J. Wigmore, Evidence § 2291, at 636 (McNaughton rev. 1961)). In most cases, the question is not whether privileged communications were disclosed, but how far the subject-matter waiver should extend. Yet "[t]here is no bright line test for determining what

---

[2] Because subject-matter waiver of the attorney-client privilege is not an issue unique to patent law, it is the Seventh Circuit's precedent, and not that of the Federal Circuit, that controls here. *In re VISX, Inc.*, 18 F. App'x 821, 823 (Fed. Cir. 2001) ("We apply regional circuit law to the issue of waiver of the attorney-client privilege."). Here, the distinction does not matter, since only well-settled general principles are in play. *See Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, 213 F.R.D 528, 532–33 (N.D. Ill. 2003) (describing general principles of subject-matter waiver in the Seventh Circuit). In any event, the parties do not mention the choice-of-law issue, and the Court will not, in the absence of guidance from the parties, independently consider whether reliance on Seventh Circuit or Federal Circuit precedent changes the outcome in this instance.

constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Id.* at 1349–50; *see also* Fed. R. Evid. 502(a). The scope of waiver should generally be construed narrowly in patent cases, but it should also be informed by notions of fairness and a concern with stopping a party from deriving a tactical advantage through selective disclosure. *Vardon*, 213 F.R.D at 533.

The basic facts pertinent to Defendants' motion are not in dispute. In its IPR petitions, Defendant Snap-on Incorporated ("Snap-On") challenged the validity of the claims of the patents-in-suit based on the Fohr prior art reference, among others, which was published on December 18, 2002. The Patent Office's Patent Trial and Appeal Board ("PTAB") instituted review in the Snap-on IPRs, finding that Fohr was in fact prior art based on the preliminary record before it and that the patents-in-suit were not entitled to claim priority to any of METCO's provisional patent applications filed before January 17, 2003, because those earlier provisional applications do not mention the 20 Amp Limitation.[3]

Plaintiffs argued in the Snap-on IPRs that Fohr is not prior art and attempted to establish an earlier priority date for the claimed invention, asserting that the named inventors conceived of a battery pack embodying the claimed invention—including the 20 Amp Limitation—as early as November 21, 2002, actually reduced it to practice as early December 12,

---

[3]The 20 Amp Limitation in the patents-in-suit requires that "the battery cells [be] capable of producing an average discharge current greater than or equal to approximately 20 amps."

2002, and constructively reduced it to practice in provisional applications filed on January 17, 2003. To support this claim, Plaintiffs relied on a declaration by Lawson, who was involved in the prosecution of the patents-in-suit.

The parties' views diverge when it comes to whether Lawson disclosed privileged communications in this declaration and, if so, how much. Lawson avers that he, Elizabeth Egasti ("Egasti"), a patent engineer at his firm, and the named inventors had meetings on particular dates in late 2002. He relates the subject matter of the meetings by quoting from his firm's invoices and time records as well as meeting minutes and other notes. He also refers to invention disclosure forms which he attaches to his declaration. One of them is undated, but he avers that it was prepared on November 21, 2002. Further, he catalogs his and Egasti's work on the provisional patent applications, which he claims included the invention described in his meetings and the invention disclosure forms.

Defendants contend that Lawson revealed privileged communications in his declaration. Defendants reason that Lawson, in disclosing the subject matter of his discussions with inventors and the invention disclosure forms, tried to leverage portions of privileged communications for his client's benefit—namely, to prove earlier dates for conception and reduction to practice—while keeping the remainder of the communications secret. Plaintiffs, by contrast, argue that Lawson's declaration was submitted only to establish a timeline for the conception of the pertinent invention. For instance, Lawson tried, through recounting his recollection of the relevant events, to date the undated invention

disclosure form that he believed reflected conception. Thus, if any disclosure occurred, the relevant subject matter should only be the dates and times of conception, nothing more.

Yet according to Defendants, Lawson needed to establish not only a timeline of his meetings and work, he also needed to connect substantively the meetings, forms, and other documents to the issues of conception and reduction to practice. Put differently, in order to be effective at overcoming Fohr, Lawson had to show that those meetings concerned the right topics. Defendants therefore request that the Court find waived any claim of attorney-client privilege as to all communications that METCO's patent counsel had (a) with individuals at METCO, including the named inventors, (b) between November 21, 2002 (the alleged date of conception) and January 17, 2003 (the alleged date of constructive reduction to practice), and (c) that relate to the preparation of the patent applications directed to the alleged invention.

The Court finds Defendants' position persuasive. First, Defendants are correct that Plaintiffs waived their privilege by disclosing privileged communications. Courts have widely held, and Plaintiffs do not meaningfully dispute, that invention disclosure forms like the two attached to Lawson's declaration are protected by the attorney-client privilege. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000); *Shukh v. Seagate Tech., LLC*, 848 F. Supp. 2d 987, 990 (D. Minn. 2011). Thus, his disclosure of the forms worked to waive the privilege as to those documents and related ones.

Likewise, the Court finds that although Lawson's declaration was focused on dating certain meetings and documents, it was equally important for Lawson to establish the legal conclusion that these matters related to and/or constituted conception of the invention and its diligent reduction to practice. Lawson did not merely date documents or inform when meetings occurred; he affirmatively stated that "the inventors of the Patents-at-Issue conceived of the invention at least as early as November 21, 2002, and were diligent in constructively reducing the invention to practice by filing a patent application on January 17, 2003." He then discussed in detail the meetings, notes, forms, and other matters that lead him to that conclusion, such as the undated invention disclosure form that was so important to the conception issue. Similarly, Lawson described the timeline of his work preparing the provisional patent applications to show that reduction to practice was diligently pursued. On that point, he stated that "in my experience, this provisional application was completed in a more timely manner than a typical patent application matter."

This level of detail distinguishes this case from *In re Application for Subpoena to Kroll*, 224 F.R.D. 326, 329 (E.D.N.Y. 2004), which involved simply reporting the date on which a meeting occurred. Describing the contents of a meeting or document and how it related to patentability standards like conception and reduction to practice is well beyond a "collateral matte[r]" which avoids the substance of attorney-client communications. *See In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 633, 635 (S.D. Ohio 1984).

As the Federal Circuit explained in *Fort James*, "[i]t would be unfair to permit [a party] to rely on favorable legal opinions, but protect the communications on which those opinions depend." *Fort James*, 412 F.3d at 1351; *VISX*, 18 F. App'x at 824 (party waived privilege by "making representations about the contents of communications. . .for strategic purposes"). Here, Lawson cannot draw the legal conclusion that his conversations with his client and his other work constituted conception of the invention and reduction to practice and yet withhold the substance of those communications—that is, the facts that underlay his legal opinion. *See Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 620–21 (N.D. Cal. 2006) (university counsel revealed client communications and counsel's advice about inventorship "to gain a legal advantage by obtaining an enforceable patent").

Viewed in this way, Lawson's declaration goes farther than the declaration at issue in *Tax-Right, LLC v. SICPA Product Securities, LLC*, Civil Action No. 3:12cv657, 2013 WL 3791487, at *4 (E.D. Va. July 18, 2013), which made only a passing comment that a term in a patent claim might be ambiguous, or the declarations in *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, No. 02 C 7345, 2003 WL 1989611, at *12 (N.D. Ill. Apr. 28, 2003), which included "mere denials" of knowledge of certain facts. In this instance, Lawson's purpose was to bolster his client's chances of securing an enforceable patent by linking the discussions he had with inventors with conception and reduction to practice. *Cormack v. United States*, 118 Fed. Cl. 39, 43 (Ct. Cl. 2014) (in assessing the scope of waiver, "courts are concerned with basic notions of fairness, aiming to prevent a party from

disclosing communications supporting its position while simultaneously withholding communications that do not"). Defendants need not take him at his word on this, however. Having provided Lawson's opinion as to the legal import of his communications with his client, Plaintiffs cannot withhold those communications from Defendants' independent review. *VISX*, 18 F. App'x at 824.

The real question becomes the scope of the resulting waiver. Plaintiffs maintain that any waiver should relate only to issues of timing of conception, but as explained above, Lawson's declaration contemplates much broader matters. *See Katz v. AT&T Corp.*, 191 F.R.D. 433, 440 (E.D. Pa. 2000) ("[T]he scope of the waiver is informed both by the purpose served by the disclosure and the content of the disclosure."). Because he had to make substantive connections between the work being done, the forms being prepared, and issues of conception and reduction to practice, Lawson's declaration covered more than timing. As such, the Court finds Defendants' proposed scope of waiver to be fair and reasonable under the circumstances, particular considering its narrow temporal scope.

This case is similar to *Pacing Technologies, LLC v. Garmin International, Inc.*, No. 12–CV–1067 BEN (WMc), 2013 WL 4774765, at *5 (S.D. Cal. Sept. 5, 2013), where the court ordered production of documents relating to preparation, finalization, and filing of a patent application because the plaintiff intended to use a draft application and communications surrounding it to establish its priority. Here, Lawson's declaration concerns both the undated invention disclosure form, which related to conception, and the provisional patent applications, which

related to diligent reduction to practice. Both were important to Lawson's disclosure, and that makes this case unlike *Lear Automotive Dearborn, Inc. v. Johnson Controls, Inc.*, No. 04-73461, 2006 WL 800740, at *1 (E.D. Mich. Mar, 28, 2006), where the plaintiffs disclosed only an invention disclosure form. There, the court rightly limited the resulting waiver to issues of conception, rejecting the defendant's suggestion that every document related to patent prosecution should be produced. *Id.* at *1–2.

Although waivers of attorney-client privilege should be narrow, focusing on avoiding unfair advantage, here the waiver is tethered to the disclosure Plaintiffs actually made. Moreover, it is equally important to recall that the attorney-client privilege itself should be narrowly construed, as it reduces the amount of otherwise discoverable information in a lawsuit. *See id.* at *1 (citing *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997)). Consequently, the Court directs Plaintiffs to produce, within seven (7) days of the date of this Order, documents within the set identified in Defendants' motion that contain or describe communications METCO's patent counsel had (a) with individuals at METCO, including the named inventors, (b) between November 21, 2002 and January 17, 2003, and (c) that relate to the preparation of the patent applications directed to the alleged invention. The Court will leave it to counsels' cooperative efforts to identify which documents in Plaintiffs' privilege log are covered by this description.

Accordingly,

**IT IS ORDERED** that the following motions to compel production of documents be and the same are hereby **GRANTED**:

(1) Case No. 14-cv-1289, Docket #193; and

(2) Case No. 14-cv-1296, Docket #149; and

**IT IS FURTHER ORDERED** that the following motions for leave to restrict documents filed in connection with the motions to compel be and the same are hereby **GRANTED**:

(1) Case No. 14-cv-1289, Docket #192, #208, and #213; and

(2) Case No. 14-cv-1296, Docket #148, #164, and #171.

Dated at Milwaukee, Wisconsin, this 10th day of July, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge